SPICER v. RAPLEE.

(Supreme Court, Appellate Division, Fourth Department.     April, 1896.)

LIMITATIONS—CLAIM AGAINST DECEDENT'S ESTATE—REVIVAL BY CONSENT.
    On the presentation to an executor of a claim barred by the statute, he signed a paper reciting that as executor he accepted the claim as a valid and existing demand against the estate, and as such executor agreed to pay it.     Thereafter another paper was signed by the other heirs, devisees, and legatees of deceased, requesting the executor to pay the claim, and reciting that, if paid, they would make no claim against the executor on account thereof.     *Held*, that the claim was relieved of the bar, and the executor was bound to pay it out of assets of the estate.

Appeal from judgment on report of referee.

Action by James Spicer against George Raplee, executor of Joshua Raplee, deceased.     From a judgment for plaintiff, defendant appeals.     Affirmed.

The complaint in this action is against George Raplee, as sole executor. and against him individually.     Joshua Raplee died on the 31st day of August,

1888, in the town of Barrington, Yates county, leaving a last will and tes-
tament, which was admitted to probate about the 1st of October, 1888; and
the complaint alleges that "the above-named defendant duly qualified as such
executor, and was at all the times hereinafter named the sole acting executor
of said estate." The complaint also alleges that "on the 21st day of Novem-
ber, 1888, one Oliver Raplee. duly presented to said George Raplee, sole acting
executor as aforesaid, a claim in writing for $1,145.50 and interest from No-
vember 1, 1888, against the estate of said Joshua Raplee, deceased," on ac-
count for goods and materials sold and furnished and for work done at the
request of said Joshua Raplee. The referee finds "that the greater part of
said claim, to wit, about the sum of nine hundred and seventy dollars, was
barred by the statute of limitations at the time of the death of the said
Joshua Raplee; that on the day of the presentation of the account the said
George Raplee, as such executor, subscribed a written acceptance of said
claim." The referee finds that Oliver Raplee relied upon the acceptance,
and took no further steps to prove the claim against the estate. The referee
also finds "that after the said George Raplee had, as aforesaid, subscribed
his name to said written acceptance of said account, he borrowed the ac-
count and acceptance, and took it to his counsel, the late Charles S. Baker,
and his counsel removed the name so subscribed to said acceptance; that
the defendant, as such executor, prior to and including the 21st day of De-
cember, 1888, paid to said Oliver, to apply on his account, the sum of $425."
On the 15th day of May, 1890, counsel for the executor prepared a written
request that the claim be paid by the executor, which was, "within a few
days of its preparation, subscribed by seven of the other heirs at law of the
deceased." On the 1st day of September, 1891, the said Oliver Raplee as-
signed to the plaintiff said claim, and payment thereof was demanded before
this action was commenced. The deceased held a note made by Oliver
Raplee for $200, which the defendant set up as a counterclaim, and which
the referee allowed. The defendant, as sole executor, admits in his answer
that the claim was presented to the executor. The answer set up the six-years
statute of limitations. The referee dismissed the complaint as to George
Raplee individually, without costs. The referee allowed the counterclaim,
and deducted the payment of $425, and found a balance in favor of the plain-
tiff for $675, with costs. The defendant appeals from the judgment.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD,
and GREEN, JJ.

Briggs & Sunderlin, for appellant.
William T. Morris, for respondent.

HARDIN, P. J. Appellant insists that there was an accord and
satisfaction produced by the payment made by the executor to
Oliver Raplee, and the transaction accompanying the payment.
He calls our attention to the testimony given by the defendant in
respect thereto; and the defendant as a witness refers to an inter-
view that took place at his home on the 20th day of December,
1888, when Oliver applied to the defendant for some more money
upon the claim. Defendant testifies that in the interview with
Oliver, Oliver consented to take $250 upon the account in payment
in full thereof. He also testifies that a day following the conversa-
tion he met Oliver at McLain's, and paid him the $250, and took a
receipt. The defendant's wife was called as a witness, and she tes-
tifies that in the interview spoken of by her husband they finally
decided on $250. She said there had been $150 paid at one time
and $25 at another, and that the $250 was in addition thereto;
and she testifies that they were to meet at Dundee the next day,
when the $250 was to be paid. To meet the evidence thus given by
the defendant, the plaintiff called as a witness Oliver Raplee, who

testified that George did not say to him that: "If I would clear out, and not bother any more, he would give me $70; no such word; George did not tell me that, nor anything like it."

2. Upon the trial the plaintiff produced an agreement purporting to be executed by the heirs at law of the deceased. It was offered in evidence, after its execution was proven, by the plaintiff. Although some objection was taken to its reception as evidence, and overruled, there was no exception taken to the ruling receiving it. The paper was received in evidence, and read as follows:

"We, the undersigned heirs at law, devisees, and legatees of Joshua Raplee, deceased, hereby request Daniel Raplee and George Raplee, the executors of the last will and testament of the said deceased, to allow and pay the claim presented against the estate of the said deceased by Oliver Raplee; and, if such allowance and payment is made by said executor, no claim whatsoever will be made by us, or either of us, against the executor by reason thereof, but the same shall be credited and allowed to them on the settlement of their accounts as such executors.

"Dated May 15th, 1890.

<table>
<tr><td>"E. Raplee.</td><td>Mary Fitzwater.</td></tr>
<tr><td>"Hiram Raplee.</td><td>Elizabeth Walling.</td></tr>
<tr><td>"Jane Arwine.</td><td>Celistia Walling.</td></tr>
<tr><td>"Daniel Raplee."</td><td></td></tr>
</table>

The paper seems to have been procured at the instance of the defendant by Oliver Raplee, and it seems to have been drawn by the attorney for the executor for the purpose of relieving him from any objection that might otherwise be made by the heirs at law in the settlement of his accounts with the surrogate. Apparently the same was procured for the purpose of avoiding all question that might be made as to the propriety of the executor's action in having accepted the account, and promised to pay it, and for the purpose of waiving all questions as to any supposed defense of the statute of limitations. The account of Oliver Raplee, containing the items thereof, amounting to $1,145.50, was verified by him by the usual oath on the 21st of November, 1888, and presented to George as the executor of their father's will, and he thereupon accepted that account, apparently in the following language:

"The foregoing account having this 21st day of November, 1888, been presented to me, one of the executors of the estate of Joshua Raplee, deceased, by Oliver, as a demand due and owing to him from said estate, I hereby, as such executor, accept the same as a val'd and existing demand against said estate, due and owing said Oliver Raplee, and as such executor agree to pay the same out of the avails of said estate.

"Dated November 21st, 1888.    ————  ————,

"Executor."

It appears by the evidence that subsequently George borrowed the paper from Oliver, to take it to Mr. Baker, and while Mr. Baker had it in his possession the signature of George was torn therefrom, and when the account and paper were returned the paper was in a mutilated condition. There is no evidence in the case tending to show there was any assent or authority given by Oliver that the signature of George should be erased or detached from the agreement signed by him. Subsequently, and apparently on May 15, 1890, the heirs at law and devisees and legatees signed the instrument wherein they requested the executors "to allow and pay the

claim presented against the estate of said deceased by Oliver Raplee; and, if such allowance and payment are made by said executor, no claim whatsoever will be made by us, or either of us, against the executor by reason thereof, but the same shall be credited and allowed to them on the settlement of their accounts as such executors." The referee has found that the persons signing the instrument from which the quotation has just been made are "the devisees and legatees under his [deceased's] last will and testament." There is no specific exception to that finding of fact, nor do we find any exception in the case which warrants the appellant in insisting that that finding of fact was erroneous. It is found that the executor has property enough of the estate of the testator in his hands to pay the claim. The referee allowed the defendant the benefit of the payments which had been made on the claim, and also allowed him the counterclaim, the note for $200, which the deceased held at the time of his death against Oliver, and reported the balance to be $675. The referee, upon the facts found by him, stated as conclusion of law, viz.:

"That the written request signed by the seven heirs at law of the said Joshua Raplee, deceased, for the executors to pay said claim, and the active part taken therein by George Raplee, relieved the claim of the bar of the statute of limitations, and the said George Raplee thereon became bound to pay the same out of the assets of said estate in his hands as such executor."

In the judgment entered upon the report of the referee the following language is used:

"It is adjudged by the court that the said plaintiff recover of the said defendant, as such executor, the said sum of $675."

It seems to be settled that it is the duty of an executor or administrator to set up the bar of the statute of limitations to a claim presented, and that, if he omits to do so, he will not be allowed in his accounting any sum paid upon a debt which, at the time of its payment by him, was barred by such statute. Willcox v. Smith, 26 Barb. 318; Gilbert v. Comstock, 93 N. Y. 484; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643. It has been repeatedly held that the defense of the statute of limitations is a personal privilege, and that no one can compel any one to take advantage of it if he chooses not to. "He may interpose the statute of limitations, but he may waive it also. The law does not compel him to resort to this defense; nor can others insist upon it for him." Bank v. Kimble, 76 Ind. 195. And in Halliburton v. Carson, 100 N. C. 99, 5 S. E. 912, it was said, in substance, as follows: "That the law does not require an executor to make his testator sin in his grave by setting up an unconscientious defense." It has been held in several of the states that an administrator or executor represents the testator so far as the personal property is concerned, and that from the personal property he can pay a claim that is well founded, although it is barred, without being obliged to take advantage of the statute of limitations. The rule seems to be otherwise in this state, as appears by the doctrine laid down in Gilbert v. Comstock, 93 N. Y. 484, and Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643. In Webber

v. Williams College, 23 Pick. 302, there was a proposition that, if the creditor would forbear bringing an action for a year, he should have the same rights that he then had. The creditor did forbear until after six years' time had run, and the court held that the agreement made "was a good waiver of the statute of limitations." There seems to be no foundation for the application of the doctrine of estoppel to the facts as presented in this case. Crawford v. Lockwood, 9 How. Prac. 547; Shapley v. Abbott, 42 N. Y. 447. The evidence disclosed at the trial warrants us in supposing that funds sufficient, resulting from the personal property of the deceased, were in the hands of the executor for the payment of the indebtedness presented by the claim of the plaintiff, and that the owners of that fund consented and requested that the claim in question be paid therefrom. Although the executor had no power to bind the other heirs at law at the time he signed the instrument consenting that the claim be paid out of the funds of the estate, it was competent for him to bind himself as one of the parties interested in the fund, and when he attached his signature to the instrument consenting that the claim be paid it is fair to presume that it was his intention then to assent, so far as he was interested in the estate, to the payment of the claim out of the funds of the estate. He never obtained the consent of his brother, the owner of the claim, to withdraw his name from the instrument which evidenced the consent. It therefore was sufficient, and binding upon him. The other instrument, executed by the other heirs and devisees, became obligatory upon them, and evidenced their consent, as well as desire, that the claim should be paid out of the fund in which they were interested. It seems to have been assumed by Porter, J., in McLaren v. McMartin, 36 N. Y. 91, that a demand barred by the statute can be revived "with the consent of those interested in the estate." We see nothing in Matter of Van Slooten v. Dodge, 145 N. Y. 330, 39 N. E. 950, helpful to the appellant in this case. In that case there was no original debt or liability of the deceased, and an expression was used in the opinion as follows: "An executor cannot subject the estate in his hands for administration to some new liability, either by his contract or by his wrongful act." Under such circumstances it seems that the conclusion of the referee that the heirs at law of Joshua Raplee "relieved the claim of bar of the statute of limitations, and the said George Raplee thereupon became bound to pay the same out of the assets of said estate in his hands as such executor," is reasonable, and should be sustained. It is well settled now that the statute of limitations acts only upon the remedy, and that it does not impair the obligation of a contract, or pay a debt, or produce a presumption of payment, "but is merely a statutory bar to a recovery." Johnson v. Railroad Co., 54 N. Y. 416; Hulbert v. Clark, 128 N. Y. 298, 28 N. E. 638. In Insurance Co. v. Bloodgood, 4 Wend. 652, there was a stipulation in the note in the following words: "I hereby agree not to plead the statute of limitations in a prosecution for any balance that may be due on said note." In the course of the opinion delivered by Southerland, J., he remarked: "The defendant is estopped by his stipulation

from availing himself of the statute of limitations. This stipulation is not confined to an action upon the note itself. It was undoubtedly intended to apply to the debt or loan of which the note was the evidence." And in that case the defendant was not allowed to avail himself of the statute of limitations. See 13 Am. & Eng. Enc. Law, 717. If the foregoing views are adopted, they will result in the affirmance of the judgment entered upon the report of the referee awarding the plaintiff a recovery for the sum of $675, the balance remaining unpaid upon the claim.

Judgment affirmed, with costs. All concur.